**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DANIEL LAMER,** | ) | **CASE NO.5:03CV1526** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **METALDYNE COMPANY, LLC,** | ) | **MEMORANDUM AND OPINION** |
| **ET AL.,** | ) | |
| **Defendants.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendants' Metaldyne Lester Precision Die Casting, Inc., Lester Precision Die Casting, Inc., Metaldyne Corporation and Metaldyne Company, LLC, Motion for Summary Judgment. For the following reasons, the Court grants Defendants' Motion.

**DEFENDANT COMPANIES**

As a preliminary matter, Defendants allege Plaintiff was not employed by Defendants Metaldyne Corporation (a holding company for various subsidiaries) nor Metaldyne Company LLC (a wholly owned subsidiary of Metaldyne Corp.). Defendants allege Plaintiff was employed by Lester Precision Die Casting, Inc., which is now known as Metaldyne Lester

1

Precision Die Casting, Inc. In June 2001, Metaldyne Company LLC acquired GMTI Holding Company and its indirect wholly-owned subsidiary, Lester Precision Die Casting, Inc. Plaintiff was an employee of Lester at the time of the acquisition by Metaldyne Company, LLC and continued to be employed by Metaldyne Lester until his termination. As Plaintiff does not dispute and offers no evidence he was employed by Metaldyne Corp. or Metaldyne Company, LLC, nor is there evidence that either entity was involved in the adverse employment action against Plaintiff, the Court grants summary judgment for Metaldyne Corp. and Metaldyne Company, LLC.

## **FACTS**

Plaintiff alleges he was wrongfully terminated from his employment position with Defendants in violation of Title VII of the United States Code, Chapter 4112 of the Ohio Revised Code, 42 U.S.C. §1981 and in violation of federal and state public policy.

Defendants produce cast aluminum parts used in the automobile industry. Plaintiff started working for Lester on February 14, 1981, as a tool room welder. On August 29, 2001, Plaintiff's employment was terminated for alleged repeated violations of Defendants' tardiness policy. Plaintiff alleges his troubles with Defendants started with his involvement in attempts to unionize Defendants. In February of 2000, Plaintiff was disciplined for allegedly threatening to bring a gun into the workplace. Plaintiff denies making such a threat but admits to voicing his concerns that workers in the company were becoming stressed and someone may bring a gun into the building. Plaintiff alleges the comment was no different than ones made by other employees yet, he was punished and others were not. As a result of this incident, Defendant required Plaintiff to sign a Last Chance Agreement ("LCA"). Plaintiff was told he could either

2

sign the agreement or he would be terminated within forty-eight hours. Plaintiff signed the LCA and alleges he was told it would "not be used for anything petty."

Defendants had a tardiness policy requiring employees call in at least one-half hour before their shift if they were going to be late. After complaints this policy was unfair, it was modified beginning March 17, 1999, to allow for unreported tardiness due to heavy traffic, accident or other emergencies. A supervisor's approval was required, in such circumstances, to waive the tardiness.

In early 2001, Plaintiff was selected to be on a peer review board to review the termination of another employee, an African-American male, terminated for fighting. The board determined the employee should not have been terminated as no witnesses to the incident testified to the board. When the board informed Defendants of their finding, the Defendants stated the employee had been subject to an LCA for a prior incident. Based on this information, the board changed its decision and held the employee's termination was appropriate. Only later did Plaintiff discover the terminated employee was not subject to an LCA.

The terminated employee filed a complaint with the EEOC/OCRC, alleging racial discrimination. Plaintiff participated in the investigation and gave a sworn statement on June 22, 2001, which allegedly supported the terminated employee's charges against the Defendants. In addition, Plaintiff's Complaint alleges Plaintiff informed Defendants he believed Defendants' termination of the African-American employee was motivated by racial discrimination. Plaintiff alleges he was then threatened by Defendants if he engaged in further protected activities.

Plaintiff has a long history of attendance problems. His first verbal warning for tardiness, under the Employee Handbook guidelines, was issued on September 18, 2000. On June 22,

2001, the affidavit of Plaintiff in the EEOC investigation was transcribed. One week later, Plaintiff was issued a written warning for being tardy. The next day, June 30, 2001, Plaintiff again received a final warning for tardiness. On August 27, 2001, Plaintiff was two minutes late for work and was informed he was being discharged due to the repeated tardiness. Plaintiff was denied a peer review due to his signing the LCA, which Plaintiff alleges, violated the Defendants own regulations. Also, Plaintiff alleges, other employees with LCAs had been given peer reviews. Plaintiff alleges other similarly situated employees were not disciplined for tardiness and his termination was merely pretext for his statements made to the EEOC/OCRC investigators.

Defendants dispute several of the factual claims made by Plaintiff. First, Defendants allege Plaintiff's tardiness problems were extant and persisted during the entire time of his employment, and resulted in disciplinary actions, including suspensions. These reprimands included two yearly performance reviews for 2000 and 2001 that predate Plaintiff's protected activity, in which Plaintiff received low marks for attendance. Second, Defendants allege Plaintiff was required to sign the LCA because he made disparaging remarks about alternate lifestyles at a Company training meeting. Under the terms of the LCA, Plaintiff could be immediately discharged for violation of any Company rules, policies, practices and/or standards of conduct. After signing the LCA, in February 2000, Plaintiff continued to engage in a pattern of tardiness, any one of which could have resulted in his termination under the LCA.

On September 18, 2000, Plaintiff was given a verbal warning, the first step in its progressive discipline process. Defendant Metaldyne Lester issued no warning for an April 2001 tardiness. In June 2001, Plaintiff failed to call in advance after arriving for work late two days in

4

a row. Plaintiff was given a written warning for the first violation and a final warning for the second. On August 27, 2001, Plaintiff again arrived two minutes late without calling in advance. He was terminated two days later having exhausted (arguably) the progressive disciplinary process, but pursuant to the terms of the LCA.

According to Defendants, Plaintiff was not terminated for his alleged involvement in the EEOC/OCRC investigation of another employee. The other employee's discrimination charge was eventually dismissed for lack of merit. Plaintiff's statements to the EEOC/OCRC investigator were arguably favorable to Defendant's position.

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is not material unless it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 248 (1986). An opponent of a motion for summary judgment may not rely on the mere allegations of the complaint, but must set forth specific facts showing a genuine issue for trial. *Id.* When no reasonable jury could return a verdict for the non-moving party, no genuine issue exists for trial. *Id.* However, in evaluating a motion for summary judgment, the court must draw all inferences from the facts in the light most favorable to the non-moving party. *Gen. Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1097-98 (6th Cir. 1994).

## TITLE VII

Because federal case law governing Title VII actions is generally applicable to

5

discrimination claims under Ohio law, Ohio courts have described it as "well settled" that Ohio discrimination claims are analyzed in the same manner federal courts analyze Title VII claims. *Greene v. St. Elizabeth Hospital Medical Center,* No. 96-4308, 1998 WL 13410, at *5 (6th Cir. Jan. 7, 1998) (quoting *Neely v. Franklin Cty. Aud.,* 97 Ohio App.3d 771, 647 N.E.2d 557, 559 (Ohio Ct.App.1994); *see also, e.g., Sorea-Yasher v. First Office Management,* No. 96-4078, 1997 WL 720433, at *3 (6th. Cir. Nov. 13, 1997). *See Little Forest Med. Ctr. v. Ohio Civil Rights Comm'n,* 61 Ohio St.3d 607, 575 N.E.2d 1164 (1991) ( " 'reliable, probative, and substantial evidence' in an employment discrimination case brought pursuant to [Ohio Revised Code] Chapter 4112 means evidence sufficient to support a finding of discrimination under Title VII") (quoting *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n,* 66 Ohio St.2d 192, (1981)). In addition, the Sixth Circuit has held "the standards for Title VII are equally applicable to {Plaintiff's} claims under 42 U.S.C. §1981". *Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1021 n.2 (6th Cir. 2000).

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2(a)(1)(1994). Plaintiffs may establish a prima facie case under Title VII for religious discrimination by introducing direct evidence of discrimination or by using the *McDonnell-Douglas* burden-shifting paradigm. *Kline v. Tenn. Valley Auth.,* 128 F.3d 337, 348 (6th Cir.1997) (citing *Talley v. Bravo Pitino Rest., L.T.D.,* 61 F.3d 1241, 1248 (6th Cir.1995)).

### Title VII Retaliation

"To establish a prima facie case of Title VII retaliation, a plaintiff must show that (1)

plaintiff engaged in activity protected by Title VII; (2) plaintiff's exercise of his civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *EEOC v. Avery Dennision Corp.,* 104 F.3d 858, 860 (6th Cir. 1997). Plaintiff has the initial burden of making a prima facie case of retaliation. Once Plaintiff has met this burden the Defendant must articulate a non-discriminatory reason for the adverse employment action. Once Defendant has satisfied this requirement the burden shifts back to Plaintiff by a preponderance of the evidence standard, that the non-discriminatory reason cited by Defendant was merely pretextual. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), *Singfield v. Akron Metropolitan Housing Authority, et al.,* 389 F.3d 555 (6th Cir. 2004).

In meeting his burden, Plaintiff does not need to prove his case by a preponderance of evidence at the prima facie stage. *Id.* at 563. "[T]he burden of establishing a prima facie retaliation case is easily met." *Id.* For purposes of its summary judgment motion, Defendants concede Plaintiff has established he engaged in protected activity.

Under the second requirement of a retaliation claim, Plaintiff must offer evidence his exercise of his protected rights were known. Again, for purposes of its summary judgment motion, Defendants concede Plaintiff has met his burden of demonstrating the exercise of his protected rights were known by Defendants.

Under the third requirement of a retaliation claim, the Defendants concede Plaintiff has demonstrated an adverse employment action was taken against Plaintiff.

Finally, Plaintiff must demonstrate a causal connection between his engaging in a protected activity and the adverse employment action taken by Defendants. "Although no one

factor is dispositive in establishing a causal connection, evidence ... that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir.2000); *see also Oliver v. Digital Equip. Corp.,* 846 F.2d 103, 110 (1st Cir.1988) ( "showing of discharge soon after the employee engages in an activity specifically protected by section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), is indirect proof of a causal connection between the firing and the activity because it is strongly suggestive of retaliation."); *Miller v. Fairchild Indus., Inc.,* 797 F.2d 727 (9th Cir.1986) ("Causation sufficient to establish a prima facie case of unlawful retaliation may be inferred from the proximity in time between the protected action and the allegedly retaliatory discharge."). It is this element that Defendants allege Plaintiff cannot prove.

The Court finds that Plaintiff has presented enough evidence of a causal connection to between his protected activity and the adverse employment action to satisfy his burden at the prima facie stage. Plaintiff alleges the adverse employment action occurred within a few months of his giving his witness statement to the EEOC/OCRC investigator. Plaintiff presents evidence that he was not disciplined for tardiness until after he engaged in the protected activity. Plaintiff also testifies a supervisor warned him not to get involved in the peer review of the African-American employee.

### **Non-discriminatory reason**

The burden now shifts to Defendant "to articulate a legitimate, non-retaliatory explanation for the action". *Singfield at 563.* See also *Wrighten v. Metro. Hosps., Inc.,* 726 F.2d 1346, 1354 (9th Cir.1984). To meet its burden, Defendant "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision

8

had not been motivated by discriminatory animus." *Texas Dept. Of Cmty. Affairs v. Burdine* 450 U.S. 248, 257 (1981). "The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons." *Id.* at 254. See *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25 (1978); "It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* "To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." *Id.* at 255-256.

The Court finds Defendants have met their burden of articulating a non-discriminatory reason for the termination of Plaintiff's employment. Defendants have offered ample evidence of numerous reprimands, warnings and write ups given to Plaintiff for absenteeism/tardiness prior to his engaging in protected activity. Furthermore, the LCA allowed Defendants to discharge Plaintiff for any additional violation of the Company rules, policies, procedures or standards of conduct. Finally, Plaintiff does not dispute that he was, in fact, tardy when he was reprimanded.

Therefore, the burden falls back on Plaintiff to establish his termination was merely pretextual.

## Pretext

"A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews at 1021*.

"Courts have recognized that in discrimination and retaliation cases, an employer's true motivations are particularly difficult to ascertain," *Singfield* at 564, quoting *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716 (1983). ( "There will seldom be 'eyewitness' testimony as to the employer's mental processes"). "They have concluded that once a prima facie case is established either by the introduction of direct evidence or reliance on the *McDonnell Douglas* presumption, summary judgment for the defendant will ordinarily not be appropriate on any ground relating to the merits because the crux of a Title VII dispute is the 'elusive factual question of intentional discrimination,'"*Singfield* at 564, quoting *Burdine,* 450 U.S. at 255. "We agree that caution should be exercised in granting summary judgment once a plaintiff has established a prima facie inference of retaliation through direct or circumstantial evidence." *Singfield* at 564.

However, when the defendant, "fails to persuade the district court to dismiss the action for lack of a prima facie case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection, the fact finder must then decide whether the rejection was discriminatory within the meaning of Title VII. At this stage, the *McDonnell-Burdine* presumption 'drops from the case' and 'the factual inquiry proceeds to a new level of specificity. " *Aikens* at 714-15. "The ultimate question is whether the employer intentionally discriminated,

and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason ... is correct.' ... In other words, '[i]t is not enough ... to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Selwyn v. White,* 409 F. Supp.2d 958, 974 (M.D. Tenn. 2006) quoting *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 519 (1993).

The Court finds Plaintiff has failed to meet his burden in overcoming Defendants' non-discriminatory reason for terminating Plaintiff's employment. Plaintiff merely offers his own, self-serving testimony without any corroborating testimony or evidence that Defendants terminated him out of a discriminatory animus for his protected activity. The temporal proximity of the alleged workplace reprimands without something more are insufficient to rebut the large body of evidence demonstrating Plaintiff's ongoing struggles with absenteeism preceding his protected activity. Though sufficient to meet the "easily met" standard for establishing a prima facie case of retaliation, Plaintiff's evidence does not outweigh Defendants' evidence of a non-discriminatory reason for Plaintiff's termination. (There appears to be a genuine issue of fact regarding the date of Plaintiff's discussion with the EEOC/OCRC investigator. In his Complaint, Plaintiff alleges he talked to EEOC/OCRC investigators in February 2001. In his Brief in Opposition he states he may have been mistaken and the conversation with the EEOC/OCRC investigator may have taken place in June 2001). Furthermore, the LCA signed by Plaintiff expressly provides that the Defendants could terminate Plaintiff's employment on the occurrence of a single violation. The Defendants gave Plaintiff several opportunities, yet, the undisputed testimony and evidence shows Plaintiff failed to correct his behavior.

Plaintiff argues the LCA is inapplicable because it was issued by Lester Precision. As

11

Metaldyne subsequently purchased Lester, Metaldyne was Plaintiff's employer at the time of his termination and the LCA does not contain an assignment provision.  Defendants offer the affidavit of Jeffrey M. Stafiel, Executive Vice President and Chief Financial Officer of Metaldyne Corp., Metaldyne Co. LLC and Metaldyne Lester Precision Die Casting, Inc.  Mr. Stafiel testifies Metaldyne Lester purchased Lester's Twinsburg plant as an ongoing concern, retained its existing employees along with the employment policies, practices and plant guidelines in existence at the time of the purchase.  Plaintiff offers no evidence or case law to support his position that the terms of the LCA were inapplicable upon the purchase by Metaldyne.  Furthermore, Plaintiff argues Defendant Metaldyne failed to comply with various other requirements of the employee handbook and policies issued by Lester.  Plaintiff cannot have it both ways.  Either these policies and practices were in place and provide a continuing obligation by both the Plaintiff and Defendant or they did not.  Plaintiff has failed to meet its burden that the LCA and employee handbook were inapplicable at the time of Plaintiff's termination.

Plaintiff offers the record of former co-worker, Jay Erb, to show that Mr. Erb was not terminated until he accumulated nine tardies.  Mr. Erb's reprimand record does not indicate, nor is there evidence that he was a party to an LCA as was Plaintiff.  Furthermore, Mr. Erb's record shows the Defendants followed the same disciplinary process with Mr. Erb as with Plaintiff by issuing a verbal warning, a written warning and a final warning before termination.  Also, Mr. Erb's record indicates he was terminated for the very same reason as Plaintiff; repeated failure to call in when arriving late for a shift.  There is no allegation Mr. Erb's termination was the result of his engaging in protected activity.  This further bolsters Defendants' argument that its

12

termination of Plaintiff was for a non-discriminatory reason.

Plaintiff's argument that his termination was for petty violations does not persuade this Court. The LCA expressly permits the Defendants to terminate Plaintiff's employment for any violation of Company rules, policies, etc... Furthermore, Defendants gave Plaintiff ample warning to correct his behavior. Plaintiff's failure to comply with the terms of the LCA and Defendants' rules resulted in his termination.

Finally, Plaintiff argues he was never afforded the opportunity to have a Peer Review Board review his termination. The burden is on Plaintiff to show he was entitled to Peer Review in light of the LCA. Plaintiff has not done so. Plaintiff argues the African-American employee whose termination resulted in the EEOC/OCRC investigation was given a Peer Review. However, it is undisputed that, whether or not the Board was told the employee had an LCA, that employee did not, in fact, have an LCA. Therefore, the African-American employee's Peer Review was not similar to Plaintiff's situation.

After reviewing the facts and evidence the Court finds that Plaintiff has not met its burden of showing reasonable minds can differ on the Plaintiff's burden of demonstrating pretext by a preponderance of the evidence. Plaintiff's tardiness and other work related problems were well documented and ongoing, long before he engaged in the protected activity in question. Plaintiff's record shows an ongoing problem of tardiness and absenteeism as evidenced in his reprimand record and yearly performance reviews. Two performance reviews that predate the protected activity show low marks for attendance and tardiness. His Employee Reprimand Record evidences several tardiness reprimands prior to his engaging in the protected activity. Tellingly, Plaintiff does not dispute he was tardy for the times in question. He argues

the company exhibited leniency or "looked the other way" prior to his engaging in the protected activity.  The Court finds this statement perhaps most telling of all.  Plaintiff does not exhibit any concern for the expectation of his employer or their right to expect their employees to comply with company guidelines.  Simply because an employer chooses to exhibit leniency on occasion does not mean the employee has a right to an expectation of leniency.  The record clearly evidences Defendants gave Plaintiff every opportunity to correct an ongoing problem, even going above and beyond the requirements of its own rules and guidelines.  Plaintiff's own evidence shows the Defendants terminated other employees for the same violations without any hint of retaliatory animus.  Therefore, the Court grants summary judgment for Defendant and against Plaintiff on Plaintiff's claims under Title VII, 42 U.S.C. §1981 and Ohio Revised Code Chapter 4112.

### Wrongful Discharge as against State and Federal Public Policy

As Plaintiff has failed to prove violation of the underlying federal and state statutes and has failed to demonstrate Defendants lacked an overriding legitimate business reason for Plaintiff's termination, its claims for wrongful discharge as against federal and state public policy must fail as well.  See *Parry v. Mohawk Motors of Mich., Inc.,* 236 F.3d 299, 312 (6th Cir. 2000) and *Hausler v. GE,* 134 Fed Appx. 890, 895 (6th Cir. 2005).

### CONCLUSION

Therefore, the Court holds Plaintiff has failed to demonstrate any genuine issues of fact and Defendants are entitled to summary judgment as a matter of law.  Defendants' Motion for Summary Judgment is granted on all claims.

IT IS SO ORDERED.

| | |
|---|---|
| <u>3/6/06</u> | <u> /s/ Christopher A. Boyko </u><br>CHRISTOPHER A. BOYKO<br>United States District Judge<br>Original signature on file |